————o————

No. 3505.

(Court of Appeal, Parish of Orleans.)

JOSEPH V. ROCA vs. FRANK D. MAZZEI AND THE AETNA INDEMNITY CO, In Solido.

Appeal from Civil District Court, Division "C."

A. J. Rossi, Dufour and Dufour, for Plaintiff and Appellant.

Saunders and Gurley, for Defendant and Appellee.

MOORE, J.—Concurs in a separate opinion.

DUFOUR, J.—Recused.

When a building contract, in every way legal, and recorded, as the law

requires, provides for the construction of a building on a street and on lots named therein, and, without the consent and acquiescene of the surety, a building is erected on another and different street and lots, the surety will be relieved of liability.

ESTOPONAL, J. On the 26th day of February, 1903, by notorial act, Simon Segari entered into a contract with Frank D. Mazzei, one of the defendants herein, a builder, for the construction and delivery of a two story frame slated building, etc., on Park Place, near City Park Avenue, the contract price being $6,600.00.

The Aetna Indemnity Company intervened in the building as surety for the said F. D. Mazzei, and the contract and bond were duly recorded as provided by law.

The builder defaulted on his contract, failing to pay the material furnished, and the plaintiff, J. V. Roca, a furnisher of material, institutes this proceeding against the defaulting builder and said Aetna Indemnity Company to recover the sum of $923.15.

The defendant surety company, in its answer, denies that the material sued for entered into the construction of any building on which it had obligated itself as surety.

From a judgment in favor of defendant company the plaintiff appeals.

We read in the building contract that the defendant company bound itself as surety for a "dwelling to be built on the property belonging to Mr. Segari situated on *Park Place, near City Park Avenue.* No lots being particularly designated or described. Mr. Segari, for whom the dwelling was built, on the trial before and in answer to direct questions by the Court, said that he owned twelve lots on City Park Place when he entered into the contract with Mazzei, *and that he owned none on the street* where the dwelling was placed. Even though the contract does not specifically describe or locate the lots on which the building was to be

130

erected we are satisfied that the intention of the parties was to put it on one or more lots *then owned and being on Park Place*, nearest the City Park Avenue.

The record shows, and they are the uncontested facts, that a building, answering in every particular the specifications of the contract, was erected, but that it was put on a lot or lots and on a street other than those named in that instrument, and further, that the said lots were not the property of Segari at the time the contract was made, but were purchased subsequently.

Plaintiff urges that the change in the location of the building is an immaterial one and should not operate a discharge of the surety, specially in this case where all of the lots concerned were in the same block or square and plaintiff's counsel further argues in support of his position that Courts might as well discharge the surety where there was a variance of a few inches in the size of the lot named in the contract, and that built on as to do so in the case at bar.

This is an erroneous assumption predicated upon facts too widely different, from those appearing in the record in this case.

We adopt the language of counsel for defendant which fairly states the proposition as follows: It is not a question of a few inches, but of the entire thing. The whole lot is different. Each and every part and parcel is different. Each is a distinct entity, separately bought and sold, separately assessed, separately built upon, each capable, irrespective of the other of supporting a contract for a building; the one built upon not even owned by Mazzei at the time the contract was signed.

The bond here was executed pursuant to the provisions of an act of the Legislature of 1894, which law was enacted entirely in the interest of the class to which the plaintiff belongs and provides that the contract and bond shall be recorded within one week after they are signed and before the work is commenced, the obvious intent of the law being to give to material men and others interest-

131

ed an opportunity to examine the contract and ascertain its terms and conditions, and who is the surety named.

A person having a correct appreciation of the building force of such a contract, and plaintiff's business justifies us in assuming that he did, surrounded as he is by every safeguard which the law has found it possible to throw around him, should be careful to observe its terms and to exact from all parties to it that same strict observance, which he should give to them.

Defendants neglect and failure to have informed himself as to whether the absolute change of location made in the contract had been assented to by the defendant surety company, was fatal to his rights, as he was knowingly doing a thing not in the contract, in fact, furnishing material for a building placed on a street for which there was no contract at all.

It will not avail for plaintiff to say that the house for which he furnished material was built practically where the contract intended it to be, the only difference being that instead of the building being placed on Park Place, near City Park Avenue, it was placed on City Park Avenue, near Park Place, because the real question is, are the lots built on separate, and independent of those named in the contract, and if so, whether the too locations were each independent by capable of supporting a building contract.

We so find, and so finding, are not called upon to state just what variation in or modification of the contract would or would not discharge the surety, but we must hold in the instant case that the contract must be considered as found and that nothing can be read into it which would make an entirely different one.

It would be dangerous for this Court to undertake to say just how much of a variation from a building contract as relates to location , where the difference is in inches or a few feet would or would not release the surety, as the Court's decree would be predi-

cated on the facts in each case as it arose, but as we have said, the facts in the instant case do not present such an immaterial variation as gives us discretion in the premises.

The United States Supreme Court, in the case of United States vs. Boeker, et al., 21 Wallace, p. 652, where the facts involved were similar to those presented here, the variance being a change of location, said: "We think this term of the bond (location) is of the assence of the contract. It is hardly less so than the amount of the penalty. One defines the place where the liability must arise, the other the maximum of the liability for which the sureties stipulated to be bound. The former can no more be held immaterial than the latter."

"No distillery having been carried on at the place named, the contract never took effect."

Applying this reasoning here we must affirm the judgment of the lower Court and it is affirmed.

February 6th, 1905.

### Concuring Opinion.

1. Any material change in a contract for the performance of which a surety is liable, made without his consent, will operate to relieve him from liability.

2. No rule of interpretation or construction can be availed of to refine away terms and conditions of a contract expressed with sufficient clauses to convey the plain meaning of the parties as disclosed by the instrument, read in the light of surrounding circumstances and the purpose for which it was made.

3. Where in a building contract it is stipulated that the house contracted to be built is to be built on a certain designated property and in a certain described locality, a bond being taken for the faithful execution of the contract on the part of the builder; and where, subsequently, and without the knowledge or consent of the surety on the bond,

133

the contract is changed so as to provide for the construction of the house on an other property and in another locality; and where, with knowledge of the terms and conditions of the original contract and of the subsequent change thereof, a third person furnishes thereafter, materials to the builder to be used, and which were used in the construction of the house on the changed property and location, and the contractor defaults in the payment to the said third person, there can be no recovery therefor from the surety.

MOORE, J. It is fundamental that any material alteration or deviation from the terms of the contract for the performance of which the surety is bound, will, if made without his consent, operate to relieve him from liability.

Mr. Justice Story, in Miller vs. Stewart, 9 Wheat (U. S.), 680. enunciates the principle by which the obligation of sureties are controlled very distinctly and in accordance with the whole current of authority. He said: "Nothing can be clearer both upon principle and authority, than the doctrine that the liability of a surety is not to be extended by implication beyond the terms of his contract. To the terms, and in the manner, and under the circumstances pointed out in his obligation he is bound, and no further. It is not sufficient that he may sustain any injury by a change in the contract, or that it may even be for his benefit. He has a right to stand upon the very terms of his contract, and if he does not assent to any variation of it and a variation is made, it is fatal."

And this principle is consecrated in the Code, in the declaration that: "Suretyship is to be restrained within the limits intended by the contract." C. C. 3539.

This principle is as applicable in building contracts as it is in any other character of engagements, and operates with equal force not alone against the immediate parties to the undertaking, but also against third persons who, having knowledge of the terms and conditions of the contract and of the change and alteration thereof, have, nevertheless, acted without the surety's consent, ex-

pressed or implied, to the change. Hence the inquiry in the instant case is, (1) was there an alteration of the contract for the faithful execution of which the surety was bound; (2) did the surety consent to the change; (3) was the plaintiff, who is a third person who dealt with the contracting parties upon the faith of that contract, advised, or changed by with knowledge, of the terms and conditions of the contract and of its subsequent change; and (4) was the change *material?*

The contract contemplated the building of a house according to certain plans and specifications, (made part of the contract,) for a certain sum, within a certain delay, free from all claims for labor and materials, and *to build it on a particularly described property, situated in a certain locality,* to-wit: "on the property belonging to said, Segari (one of the contracting parties) situated on Park Place, near City Park Avenue, formerly Metairie Road, in the Second district of this City" (New Orleans).

The obligation of the surety, to quote from the bond, was to guarantee "the prompt, faithful and correct execution of the foregoing contract according to its true intent and meaning, and the prompt and faithful payment of the laborers employed upon the work, and of the furnishers of materials used in the construction thereof."

Both contract and bond were duly recorded in the mortgage office of the City of New Orleans, within the period prescribed by Act 180 of 1894, and before any work was commenced.

Subsequently Segari and the contractor, and without the knowledge or consent of the latter's surety, agreed that the house should be built elsewhere than where stipulated in the contract, and for that purpose Segari then acquired a lot of ground on another street, but in the same square in which were the lots on which the building, according to the terms of the contract, was to be constructed, and on this other property the house was built. After this change was effected the plaintiff sold and delivered to the

contractor the materials herein sued for, and they were actually used in the construction of the house built in this other locality.

As stated, the contract and bond were duly recorded, and, as the object of registry is notice, the plaintiff had hence due notice of the terms and conditions of the contract, and he was as much charged with knowledge of the place where the house was to be built under the contract, as he was with the knowledge that Mazzei, to whom the materials were sold and delivered, was the contractor and that the Aetna Indemnity Co. was the latter's surety.

The recorded contract advised him, not that Mazzei was simply to build a house for Segari,—a house of any character and in any locality as may be subsequently agreed on between them,—but a house of a particular character, to-wit: "a two story, frame, slated dwelling," and to build it on a particular property in a specially indicated locality, to-wit: "on the property belonging to Segari, situated on Park Place, near City Park Avenue, formerly Metairie Road."

Locality, in my opinion, was as much of the essence of this contract as was that of any stipulation in the contract.

If the plaintiff had furnished the contractor with materials absolutely foreign to the general character of the work contemplated by the contract, as for example a six story steel frame, which in this case would be an alteration of the general character of materials necessary for the execution of the work contemplated by the contract, could it be successfully claimed that simply because the contractor ordered the steel frame and that it was actually used and employed in the building of the changed character of the work, the surety, who had not given his consent to such change, was nonetheless liable for the cost of the steel frame up to the amount, at least, of his bond? I think not. In principle there is no more difference in changing the general character of the work contemplated or the general character of the materials which are necessary for its execution, than there is in changing the locality where the work is to be performed, from the place stipu-

136

lated in the contract to an entirely different location. Both are equal essential of the contract; and if the furnisher of supplies fails to see to it that the materials ordered are clearly foreign to the work contemplated by the contractor, or, as in this case, that his supplies and materials were not being used and employed in any work done on the property specifically designated in the contract; that no work of any kind was being done there; but that, on the contrary, his materials were being used to construct works erected elsewhere, he must suffer the consequences of his own imprudence to the extent, at least, of not being able to recover of the surety who had not consented to the change and had in no manner contributed to the imprudence committed.

If the contract called for the repair, instead of the entire erection, of a house "on the property belonging to said Segari, situated on Park Place, near City Park Avenue," and if the plaintiff had as he did here, furnished and delivered materials to the builder, Mazzei, at a different place from that mentioned in the contract, and knew, or must have known, as, I am of the opinion, he was charged with the knowledge here, that the materials were intended for and were being used in the repair of some other house situated on the property owned by Segari, and other than the one designated in the contract, I do not think it could be seriously contended that the change was so immaterial that, though made without the consent of the surety, the latter was bound for the payment of the materials so furnished and employed. Locality, or place, in the one instance is as much of the essence of the contract as it is in the other. A change in this particular, in either case, is a *material* change; and the principle of law which affirms the discharge of the surety who has not consented to the deviation from the contract in the one case, is equally applicable in the other. The character of the undertaking stipulated in the contract works no change of legal principles.

It is argued that forasmuch as the bond, under its specific terms

as well as under the provisions of Act 180 of 1894, in accordance with which the bond was given, is primarily for the benefit of third persons *id est,* laborers who have been employed on, and material men who have furnished supplies to, the works, it is not to be construed under the rule applicable to sureties generally and to the effect that their obligations are *strictisimi juris;* and that therefore it is that "no act on the part of the parties to a building contract, owner and builder, can in any way prejudice the right of third parties for whom the bond is given, and to hold otherwise would open the doors to collusion between the contractor and the owner."

Conceding, *arguendo,* that the obligation of the surety in contracts of this character are not to be construed *strictisimi,* nor even *stricti juris,* but liberally, no construction, however, can be adopted which has the effect of making a new contract for the parties.

That all terms, conditions and stipulations employed in such contracts are to have a reasonable interpretation, according to the intent of the parties as disclosed by the instrument read in the light of surrounding circumstances and the purpose for which it was made, may not be denied. On the other hand, however, no rule of construction can be availed of to refine away terms and conditions of a contract expressed with sufficient clearness to convey the plain meaning of the parties and embodying stipulations, compliance with which is made the condition to liability thereon.

Where a contract, as in this case, stipulates that a house is to be built "on the property belonging to said Segari, situated on Park Place, near City Park Avenue," it would be but making a new contract, to interpret or construe this clause as giving the parties to that contract the right to build a house at any place else, and wherever their interest, fancy or caprice may suggest; and a violation of every principle of law to hold the surety to his obliga-

138

tion notwithstanding the change was made without his knowledge or consent.

I must not be understood as even intimating that *no* change or alteration can be made in a building contract, or in the plans and specifications, with the consent of the builder and the owner, or even, in some cases, by one alone of these parties, without discharging the surety who may not have consented to the change. It is only when the *plain* and *specific stipulations* of the contract, or the *general character* of the work contemplated by the contract, or the *general character* of the materials which are necessary for its execution, have been changed, in other words when the change is a material change, that the surety, who has not consented thereto, is discharged; and so in the case of a third person dealing with the contractor or with the owner, when the material change was known to him before he entered into any dealings with the parties, and was hence put on inquiry as to the right of the parties to make that change so as to still hold the surety, he may not be permitted to look to the surety for payment for his claim, whether the claim be for labor performed or for materials furnished. In such case he must look to the builder and to the owner, and he has, to secure his claim, if proper registry thereof is made, a lien on the works and the land on which they are constructed.

In line with the views herein expressed are the two cases cited and relied on, by the appellee's counsel, United States for use, etc., vs. National Security Co., 92 F. R., 549; and United States Fidelity & Guarantee Company vs. Omaha Building and Construction Co., et als., 116 F. R., 145.

In the National Security Company case it appears that the United States, whose statute concerning building contracts entered into by the Government, (Act of Congress approved August 12th, 1904; 28 Stat. 278 C. 280), is very simular to the Act of 1894 of this State, entering into a contract with one T. J. Prosser for the construction of a boiler and pump house, pumping machinery and connections, water mains, steel trestle and water tanks, etc., for the

water supply system for the military post near Little Rock, Ark. For a defense to the action which was instituted by the Givernment for the use of the person who furnished materials to the contractor, the defendant, who was the surety of the contractor, pleaded, and the trial Court so found, that subsequently to the execution of the bond and the contract, which it was given to secure the Government had entered into a further agreement with Prosser modifying the terms of the original contract, or, more accurately, the specifications thereto attached, in such manner that Prosser was required to lay only 1866 linear feet of 6 inch water pipe instead of 3860, as specified in the original contract, or rather in the plans for its execution, and that this was made without the knowledge or consent of the Surety Co.

It was not shown that the person who had purchased materials for the works, and for whose use the Government was suing, knew, or had the means of knowing that any such change had been made and besides this the change appears to have been made after the right of the claimant had accrued. The Court did not regard this change as material and proceeded to say: "We are of opinion that the sureties in a bond, executed under the act in question cannot claim exemption from liability to persons who have supplied labor and materials to their principal to enable him to 'execute the contract with the United States, simply because the Government and the contractor, without the surety's knowledge, have made some changes in the contract subsequent to the execution of the bond to secure its performance, *which do not alter the general character of the work contemplated by the contract or the general character of the materials which are necessary for its execution.*"

In the Omaha Building and Construction Company case the surety sought to avoid liability on the bond on two grounds: (1) That the State did not retain 15 per cent. of each estimate of the work at the time it was made, as provided in the contract between the State and the Construction Company, and the Act of the

Legislature; and (2) that the Construction Company assigned all the money owing or coming to it under the contract to the Omaha National Bank, and that the treasury warrants issued to the Construction Company for the work done under the contract was assigned to the Bank and collected by it.

It will be readily appreciated that the acts complained of in that case, sufficient though they may be to discharge the surety, *quoad* the immediate parties to the contract, are not such which can effect third persons, especially when the third person in no manner contributed to their happening, and did not consent with the parties, with knowledge, actual or constructive, of their existence. As said the Court in passing upon that case: "It is not alleged or pretended that the appellees (the furnishers of materials) said or did anything to the injury of the appellant, (the surety company), *or to the prejudice of their own rights under the bond.* They had nothing to do with the estimates or their payment and nothing to with the Construction Company's assignment of its earnings under the contract and are in no manner affected thereby."

In the case at bar the plaintiff had all to do with that which was "to the prejudice of his own right under the bond." He knew where, according to the contract, the house was to be built; he knew that the surety company had bound itself for the payment of the material that may enter into the construction of that particular house and none other. Yet withal, he deliberately delivers materials to Mazzei at some place other than that designated in the contract, knowing that they were employed, and were intended to be so employed when he delivered them, in the building of a house clearly *not contemplated by the terms of the contract.*

He has lost his right against the surety by his own action deliberately taken with knowledge of all the facts.

For these reasons, as well as for those assigned by the Court, I concur in the affirmance of the judgment appealed from.

February 6th, 1905.